UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| DAVID SWART, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CV-00127-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| TFE HOLDINGS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Swart brings claims against his employer, Defendant TFE Holdings, LLC, and the LLC's members, Defendants Charles Perry and Marie Perry, for breach of contract and violations of the Fair Labor Standards Act, alleging that they did not pay him any wages over the course of his eighteen-month employment at the company. He also brings claims against the Perrys for their alleged tortious acts following Plaintiff's firing. Defendants now move to dismiss this case for lack of subject matter jurisdiction, or, alternatively, to compel arbitration and to dismiss the claims against the Perrys. For the following reasons, this motion [Doc. 47] is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

TFE Holdings, LLC ("TFE") is a manager-managed LLC governed by an Operating Agreement. [Doc. 47-2]. This Operating Agreement contains a mandatory arbitration clause requiring "[a]ny dispute arising out of or in connection with" the Agreement be decided by arbitration. [*Id.* at pg. 13]. When the Operating Agreement was signed on November 17, 2023, Plaintiff, Defendant Charles Perry, and Defendant Marie Perry were each listed as the three members and the three managers of the LLC. [*Id.* at pgs. 15-16].

On December 21, 2023, Plaintiff was hired as TFE's Chief Operations Officer ("COO"). [Doc. 45, ¶ 8; Doc. 1-1, pg. 1]. Plaintiff executed an Employment Agreement with TFE, separate from TFE's Operating Agreement, that set out the terms and conditions of his employment as COO. [Doc. 1-1]. His base annual salary for this position was $250,000, which was to be paid "in accordance with [TFE's] standard payroll policies but in no case less frequently than monthly." [*Id.*]. Plaintiff also agreed to a non-competition restriction on his employment in exchange for six months' salary to be paid within 30 days of the end of his employment. [Doc. 1-1, pgs. 3-4].

In the Amended Complaint, Plaintiff appears to contend that he was fired from all three of his positions (as manager, member, and COO) at a special meeting of TFE's members on June 30, 2025.[1] [Doc. 45, ¶¶ 3, 9]. The Perrys accused him of soliciting funds from a potential investor for another project in Ohio, in an apparent breach of his fiduciary duty to TFE. [*Id.* at ¶ 11]. This reason for his firing, Plaintiff claims, was pretextual. He alleges that the Perrys knew that the Ohio project was not ready for funding, and that the potential investor denied that Plaintiff solicited funds from him during the call.

Plaintiff now brings claims for Fair Labor Standards Act violations, breach of contract and the implied covenant of good faith and fair dealing, tortious interference with business relationships, civil conspiracy to commit tortious interference with business relationships, defamation and defamation per se, and civil conspiracy to defame or commit defamation per se. He alleges that he was never paid for his work as COO over his eighteen-month tenure, nor has he

---

[1] There is a factual dispute over which positions Plaintiff was fired from, and, as discussed later in the Opinion, Plaintiff himself appears uncertain what positions he was fired from. Defendants assert that Plaintiff was only removed as a manager and is still TFE's COO. [Doc. 48, pg. 3 ("This dispute commenced on June 30, 2025, the day Mr. Swart was removed as a *manager* by the members of the Company, pursuant to the Agreement. Mr. Swart was not then and has not since been terminated from his position as the Company's COO.")]. Defendants do not establish whether Plaintiff was removed as a member.

received the non-compete termination money. Additionally, Plaintiff alleges that after his firing the Perrys lied to his business associates and potential investors by sharing that he was fired for acting improperly. He asserts that these lies have harmed his reputation and his ability to receive funding for future business projects.

Plaintiff's original Complaint alleged that this Court has diversity jurisdiction over these claims. [Doc. 1, ¶ 1]. After Defendants moved to dismiss for lack of jurisdiction [Doc. 33], Plaintiff filed an Amended Complaint, changing his theory of jurisdiction to federal question jurisdiction. [Doc. 45, ¶ 1]. Defendants' first motion to dismiss [Doc. 33] addressing the original Complaint is therefore moot, and the Court will only consider their second motion to dismiss [Doc. 47] concerning the Amended Complaint.

## II. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Legal Standard

Where a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions can make facial or factual attacks on subject-matter jurisdiction. *Howard v. City of Detroit*, 40 F.4th 417, 422 (6th Cir. 2022). Facial attacks challenge the sufficiency of the pleading, whereas factual attacks challenge the facts in the pleading. *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Here, Defendants make a facial attack, arguing that Plaintiff's only basis for federal question jurisdiction—the Fair Labor Standards Act claim—is inapplicable to Plaintiff's employment as COO.[2]

[2] Defendants do challenge many of the facts Plaintiff presented in the Amended Complaint, but these challenges do not impact the jurisdiction analysis.

When considering a facial attack on jurisdiction, a district court takes the allegations in the complaint as true. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Gentek*, 491 F.3d at 330). "If those allegations establish federal claims, jurisdiction exists." *Gentek*, 491 F.3d at 330. But Defendants' motion is not truly a jurisdictional challenge. The Court's jurisdiction over Plaintiff's FLSA claim rests on 28 U.S.C. § 1331. The FLSA's exemptions do not limit this Court's jurisdiction. Instead, they provide only that the Act's wage requirements "shall not apply" to certain employees. 29 U.S.C. § 213(a). That language defines the scope of the Act's protection, not the Court's power to hear a claim under it. And courts treat a statutory limitation as jurisdictional only when Congress clearly says so. *Arbaugh v. Y & H Corp*., 546 U.S. 500, 515–16 (2006). Congress has not done so here.

Because Defendants' argument goes to the merits, the Court construes it as a motion to dismiss under Rule 12(b)(6). The executive exemption is an affirmative defense on which Defendants bear the burden. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 837 (6th Cir. 2002). A plaintiff need not plead around an affirmative defense, and dismissal on that ground is proper only when the complaint's own allegations show that the defense applies. *Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 547 (6th Cir. 2012). As explained below, Plaintiff's allegations do not establish the exemption.

**B. Analysis**

The Fair Labor Standards Act ("FLSA") requires employers to pay their employees minimum wage for all hours worked. Some employees, however, are exempt from this requirement. Relevant here, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the minimum wage requirement. 29 U.S.C. § 213(a)(1). When an employer raises a plaintiff's status as an exempt employee as a defense to an FLSA claim,

the employer has the burden of proving that the employee satisfies an FLSA exemption. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 837 (6th Cir. 2002). The employer must prove an exemption by a preponderance of the evidence, and courts give exemptions a "fair" reading, not a narrow one. *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 54 (2025); *see Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018).

Under FLSA regulations, an employee's position must satisfy three tests to qualify for the bona fide executive exemption: (1) a duties test; (2) a salary-level test; and (3) a salary-basis test. *See Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626–27 (6th Cir. 2009); 29 C.F.R. § 541.100(a)(2)-(4) (duties test); 29 C.F.R. § 541.600 (salary-level test); 29 C.F.R. § 541.602 (salary-basis test). The duties and salary-level tests are not in question here; the sole issue is whether Plaintiff satisfies the salary-basis test.

Under the governing regulations, an employee meets the salary-basis test "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847 (6th Cir. 2012) (quoting 29 C.F.R. § 541.602(a)); *see also Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44–45 (2023) ("an employee can be a bona fide executive only if he receives a 'predetermined and fixed salary'—one that does not vary with the precise amount of time he works.") (quoting 84 Fed. Reg. 51230 (2019)). Put another way, to satisfy the salary-basis test, the employee "must receive … his 'full salary'—'for any week in which [he] performs any work.'" *Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 581

(6th Cir. 2025) (quoting 29 C.F.R. § 541.602(a)(1)). This test "focuses on pay received, rather than the terms of the employment agreement[.]" *Orton*, 668 F.3d at 847.[3]

Plaintiff asserts that he fails the salary-basis test because, while he was promised a $250,000 annual salary to be paid in monthly installments, he was never actually paid. Defendants contend that TFE "has not been operational as a going business and is not able to pay [Plaintiff] anything," but that because "he was set to receive a predetermined amount, not subject to any reductions based on quality or quantity of work performed," the salary-basis test is satisfied. [Doc. 48, pgs. 6-7].

Defendants' argument asks the Court to ignore a critical phrase within the salary-basis test—"if the employee regularly *receives*"—in favor of the Employment Agreement setting out Plaintiff's *expected* compensation. This argument was rejected by the Sixth Circuit in *Orton*. In *Orton*, the plaintiff's employer initially paid his salary as set out in his employment agreement, but eventually it began having payroll issues and it stopped paying him. 668 F.3d at 845. For approximately four months, the plaintiff continued working for his employer without pay, and after he was laid off he filed suit for FLSA violations. *Id.* The district court found the plaintiff was subject to the administrative exemption because "administrative employees are exempt from coverage within the meaning of the FLSA based on the salary that they were owed under their employment agreements and not based on the compensation that they actually received." *Id.* at 848. The Sixth Circuit reversed, explaining that following the 2004 update to the FLSA

---

[3] The regulation defining the salary-basis test was updated in 2004. The old version stated, in relevant part, "[a]n employee will be considered to be paid 'on a salary basis' within the meaning of the regulations *if under his employment agreement* he regularly receives each pay period...." 29 C.F.R. § 541.118(a) (1973) (emphasis added). The new version looks to the salary actually paid to the employee rather than the amount promised to the employee in the employment agreement. *Orton*, 668 F.3d at 847-48.

regulations, "employment agreements are no longer the relevant starting point for whether an employee is paid on a salary basis." *Id.* (citing *Baden–Winterwood,* 566 F.3d at 627). The Sixth Circuit held that "the question is therefore not what [the plaintiff] was owed under his employment agreement; rather, the question is what compensation [the plaintiff] actually received." *Id.*

To the extent that Defendants rely on *Venema v. Bode*, No. 1:23-CV-316, 2025 WL 1688678 (W.D. Mich. June 9, 2025), in support of their argument that a company's inability to pay its employees does not defeat the salary-basis test, the Court first notes that this case is a district court case, and therefore, not binding precedent. More importantly, *Orton* already contemplated this precise situation, and there the Sixth Circuit did not create an exception to the salary-basis test to excuse an employer's inability to pay. *See Orton*, 668 F.3d at 845 (explaining that the employer ceased paying the plaintiff because it "had trouble making payroll"). Additionally, the circumstances present in *Venema* are easily distinguishable from both *Orton* and the instant case. In *Venema*, once the plaintiff was converted from an hourly to a salaried employee, she received "fixed, bi-weekly payments on a salary basis through the end of her employment," though she faced periods of inconsistent payments due to the plaintiff herself "delaying and often withholding her own pay to manage cash flow." 2025 WL 1688678, at *3. The district court concluded that because both parties agreed that "the overall goal was ultimately to pay [the plaintiff] her predetermined salary," she was exempt under the FLSA. *Id.* The key distinction in *Venema* is that the plaintiff actually received compensation on a salary basis throughout the course of her employment; in *Orton*, once the employer started having trouble making payroll, the plaintiff did not receive any compensation.

Such is the case here. Plaintiff was never paid for his work as COO across his eighteen-month employment, and the Court cannot set aside this essential fact simply because TFE was

unable to pay him. Because the salary-basis test asks if the compensation that Plaintiff *received* was predetermined and fixed, this case is simple: he received no compensation, so he cannot satisfy the salary-basis test. To be sure, Plaintiff's employment agreement did establish a predetermined salary for his work that was not tied to his hours or performance. But this agreement matters little given that the Court must evaluate the actual compensation received. Put another way, the salary-basis test demands that "[w]henever an employee works at all in a week, he must get his full salary for that week." *Helix*, 598 U.S. at 51. Plaintiff alleges that he worked as TFE's COO for eighteen months, yet he never got any portion of his salary. That allegation, taken as true, fails the salary-basis test. As such, he does not satisfy the executive exemption from the FLSA minimum wage requirement, and Defendants have not established the exemption at this stage.

Accordingly, pursuant to 28 U.S.C. § 1331, the Court has federal question subject matter jurisdiction over Plaintiff's FLSA claim because it arises under federal law. On the state law claims, the connection to the federal claim is based on the employment relationship which is at issue here and the circumstances surrounding the separation. Accordingly, the Court finds that it has supplemental jurisdiction over the other claims because they are essentially a part of the "same case or controversy" as the federal claim. *See* 28 U.S.C. § 1367(a). While the Court could decline to exercise supplemental jurisdiction, there is no reason to do so at this stage. Thus, Defendants' motion to dismiss for lack of subject matter jurisdiction is **DENIED**.

## III. MOTION TO COMPEL ARBITRATION

### A. Legal Standard

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA authorizes the Court to enforce arbitration

agreements by staying the action and compelling arbitration. 9 U.S.C. §§ 3, 4. In addressing a motion to stay and compel arbitration, the court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

Courts are instructed to "examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007). The Sixth Circuit has stated even more forcefully that "any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 504 (quoting *Masco Corp. v. Zurich Am. Ins. Co.,* 382 F.3d 624, 627 (6th Cir. 2004)). Still, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Id.* (quoting *Simon v. Pfizer Inc.,* 398 F.3d 765, 775 (6th Cir. 2005)).

To determine whether a claim falls within the scope of an arbitration clause, the Sixth Circuit instructs courts to ask "if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 395 (6th Cir. 2003).

The party opposing arbitration has the burden to show a genuine issue of material fact as to whether the agreement to arbitrate is valid. *Great Earth Cos., Inc. v. Simmons*, 288 F.3d 878, 889 (6th Cir. 2002). The necessary showing is similar to what is required to defeat a motion for

summary judgment. *Id.* The district court must view all facts and any inferences in the light most favorable to the party opposing arbitration "and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.* (citing *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (reciting standard of review on summary judgment)). The Court may consider matters outside the pleadings in ruling on a motion to compel arbitration. *See id*.

**B. Analysis**

Plaintiff held three separate and distinct positions at TFE—member, manager, and employee.[4] His roles as member and manager are controlled by the Operating Agreement, and his role as an employee is controlled by the Employment Agreement. The Operating Agreement contains a mandatory arbitration clause requiring "[a]ny dispute arising out of or in connection with" the Agreement be decided by arbitration. [Doc. 47-2, pg. 13]. The Employment Agreement, on the other hand, does not contain an arbitration clause. Thus, whether Plaintiff's claims must proceed to arbitration depends on whether the Operating or Employment Agreement governs the dispute, which ultimately depends on whether Plaintiff's claims relate to his role as a member, manager, or employee.

Plaintiff's FLSA and breach of contract claims relate only to Plaintiff's position as COO because both allege that TFE failed to pay him for his work as COO. Therefore, these claims are

---

[4] The Amended Complaint does not appreciate the difference between an LLC "manager," a position defined by statute, and a "manager" under the layman's definition. Plaintiff's role as COO may have been a managerial role under the layman's definition of the word, but it is separate and distinct from his role as the LLC's manager. The Tennessee Limited Liability Company Act defines an LLC manager as "a person elected, appointed, or otherwise designated as a manager by the governing body, and any other person considered elected as a manager pursuant to § 48-241-106." Tenn. Code Ann. § 48-202-101(25). A similar definition appears in the Tennessee Revised Limited Liability Company Act. Tenn. Code Ann. § 48-249-102(18). Managers have specific rights, responsibilities, and duties, pursuant to the Operating Agreement, that employees do not.

outside the scope of the Operating Agreement's arbitration clause and may be litigated in this Court.

Plaintiff's tort claims, however, are not as easily contained to just one of his roles at TFE. In short, his tort claims allege that he was both fired for acting improperly and that the Perrys spread false representations to others that he was fired for acting improperly, which interfered with his business relationships and constituted defamation. The underlying basis to these claims—that Plaintiff did not act improperly— turns on what kinds of actions are proper or improper, which are set forth in the Operating Agreement for members and managers, and in the Employment Agreement for employees.

To determine which of Plaintiff's roles are implicated by these claims, the Court must parse through Plaintiff's confusing and seemingly contradictory statements describing which positions he was allegedly fired from. As Plaintiff explains in the Amended Complaint, he was "fired as a 'Manager' and had no other 'managerial' position connected in any way to the LLC aside from being its Chief Operating Officer." [Doc. 45, ¶ 9]. As such, this statement appears to claim that he was either simultaneously removed as Manager and fired as COO or that he was only fired as COO. But later in the Amended Complaint, he seems to explain that he was only removed as a manager. When describing the basis for his firing/removal, Plaintiff explains that the *Operating Agreement* provides that '"neither…Members…nor Managers shall be prohibited or restricted in any way from…conducting…businesses of any nature whatsoever…(except for companies in the same business or geographical area)'. Thus the firing was improper." [*Id.* at 11(d)]. Again, the Operating Agreement governs only his roles as member and manager. If Plaintiff wanted to claim that he was improperly fired as COO, he would need to cite to a provision of the Employment Agreement in support. By only citing to the Operating Agreement, it appears that he is only

arguing that his removal as a manager was improper. Moving to Plaintiff's response to the instant motion, he now understands that there is a difference between an LLC manager and his managerial employment role as COO and seems to argue that he was both removed as a manager and was fired as COO. [Doc. 49, pg. 5 (explaining that the Operating Agreement "governs the rights and obligations of Members and Managers. It does not purport to govern employees … Plaintiff is suing as an employee."); *id.* at pgs. 7-8 ("Plaintiff's Removal 'as a Manager' Does Not Transform His Employment Claims Into Governance Disputes … the only managerial capacity Plaintiff ever exercised was COO, which he reasonably understood to have been taken away in the June 30th meeting.")]. For their part, Defendants are clear that Plaintiff was only ever removed as a manager, and that he is still COO [Doc. 48, pg. 3].

Plaintiff argues that he is only bringing claims in his capacity as an ex-employee under the Employment Agreement, and therefore his claims fall outside of the scope of the Operating Agreement's mandatory arbitration clause. If he had only been fired as COO, his argument might have merit. But this does not appear to be the case. Between the Amended Complaint and Plaintiff's Response brief, he repeatedly references his removal as a manager at the June 30th meeting. Additionally, Defendants' evidence—the email notice of the meeting and the meeting minutes—confirms that Plaintiff was at least removed as a manager that day. [Docs. 47-3; 47-4]. If Plaintiff was simultaneously removed as a manager and fired as COO *or* if he was only removed as a manager, then either way his tort claims would implicate the Operating Agreement. To determine whether a claim falls within the scope of an arbitration agreement, the Sixth Circuit instructs courts to ask "if an action could be maintained without reference to the contract or relationship at issue." *Fazio*, 340 F.3d at 395. Here, under either circumstance, Plaintiff's claims

could not be maintained without reference to his role as manager and the Operating Agreement, even if he purports to only bring his claims "as an ex-employee."

Because the Operating Agreement compels arbitration of disputes "arising out or in connection with" the Agreement, all claims arising from Plaintiff's removal as a manager must proceed to arbitration under the Operating Agreement, including the tort claims. Therefore, Defendants' motion to compel arbitration is **GRANTED** as to claims three through six in the Amended Complaint. Defendants have requested a stay [Doc. 52, pg. 1], so the Court must stay the arbitrable claims pending arbitration. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Whether to stay the non-arbitrable claims rests in the Court's discretion. *See McGee*, 941 F.3d at 865. A stay of those claims is not warranted. The FLSA and contract claims ask whether TFE paid the salary it promised. The arbitrable claims ask whether the Perrys defamed Plaintiff and interfered with his business relationships. The arbitration will not resolve the wage claims and delaying them serves no purpose. The FLSA and contract claims against TFE and the FLSA claim against the Perrys will proceed in this Court.

## IV. MOTION TO DISMISS INDIVIDUAL DEFENDANTS

Finally, Defendants move to dismiss all claims against the Perrys, arguing that as members of TFE, they are not personally liable for the obligations of the company. Pursuant to the Tennessee Limited Liability Company Act, "a member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC whether such arise in contract, tort or otherwise." Tenn. Code Ann. § 48-217-101(a)(1). Similarly, the Tennessee Revised Limited Liability Company Act provides that "[a] member, holder, director, manager, officer, employee, or other agent of an LLC does not have any personal obligation, and is not

otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC[.]" Tenn. Code Ann. § 48- 249-114(a)(1)(B). These general rules, however, "are subject to exceptions[.]" *Altruist, LLC v. Medex Patient Transp., LLC*, 308 F. Supp. 3d 943, 952 (M.D. Tenn. 2018). Under both the TLLCA and TRLLCA, "a member, holder of financial interest, governor, manager, employee or other agent may become personally liable in contract, tort or otherwise by reason of such person's own acts or conduct." Tenn. Code Ann. § 48-217-101(a)(3); *see* Tenn. Code Ann. § 48-249-114(a)(2) (TRLLCA) ("a member, holder of financial rights, director, manager, officer, employee or other agent may be personally liable by reason of such person's own acts or omissions.").

Because Plaintiff's tort claims must proceed to arbitration, the Court does not decide whether those claims may proceed against the Perrys individually. That question belongs to the arbitrator. The motion is therefore **DENIED AS MOOT** as to the tort claims, with Defendants having the ability to raise this argument in arbitration.

Plaintiff's breach of contract claim against the Perrys, however, fails. The Perrys are not parties to the Employment Agreement, TFE is. TFE alone was the entity that promised to pay Plaintiff's salary and the non-compete payment [Doc. 1-1, pg. 3-4]. Therefore, the breach of contract claim against the Perrys is **DISMISSED**.

The Court must treat Plaintiff's FLSA claim against the Perrys differently than the breach of contract claim. The Act defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing cases); *see also Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994). The Tennessee limited-liability statutes do

not change that result. A state statute cannot relieve a person of liability that federal law imposes. *See* U.S. Const. art. VI, cl. 2. The Amended Complaint alleges that the Perrys "controlled the company and its disbursements, and failed to insure [sic] that TFE paid [Plaintiff]. [Doc. 45, ¶ 17]. Accordingly, Plaintiff's FLSA claim was properly raised against the Perrys, and Defendants' motion is **DENIED** as to this claim.

## V. CONCLUSION

For the reasons stated above, Defendants' first motion to dismiss [Doc. 33] is **DENIED AS MOOT**, and Defendants' second motion to dismiss [Doc. 47] is **GRANTED IN PART** and **DENIED IN PART**. The Court has subject matter jurisdiction over this action, and the motion to dismiss for lack of subject matter jurisdiction is **DENIED**. To the extent the motion seeks dismissal of the FLSA claim on the ground that Plaintiff is an exempt executive, it is also **DENIED**. The motion to compel arbitration is **GRANTED** as to Plaintiff's claims for tortious interference with business relationships, civil conspiracy to commit tortious interference, defamation and defamation per se, and civil conspiracy to defame [Doc. 45, Counts 3-6]. Those claims **SHALL** proceed to arbitration under the Operating Agreement.

The motion to dismiss the claims against Defendants Charles Perry and Marie Perry is **GRANTED** as to the breach-of-contract claim, which is **DISMISSED WITH PREJUDICE** as to them. The motion is **DENIED** as to the FLSA claim against the Perrys. The motion is **DENIED AS MOOT** as to the claims referred to arbitration, without prejudice to Defendants' right to raise their individual-liability argument in arbitration.

The claims subject to arbitration are **STAYED** pending the completion of arbitration. Plaintiff's FLSA and breach-of-contract claims against TFE and the FLSA claim against the Perrys shall proceed in this Court. The parties **SHALL** file a joint status report every ninety (90) days

describing the progress of the arbitration and **SHALL** notify the Court within fourteen (14) days after the arbitrator issues a final award.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge